## Miller et al. *versus* Irvine.

1. A. and B. confessed a judgment to C. to secure his own debt and those of certain other creditors. An execution issued thereon, and C. purchased the personal property of the debtors. C. afterwards agreed with A. and B. to leave the property in their possession, in order to sell the same, and pay the proceeds to the creditors. Subsequently another creditor seized the property as the property of A. and B. under a judgment against them. In a feigned issue to try the title, *Held*, that the sheriff's sale passed a good title to the property to C., and that it was equally clear that he had a right to leave it with the defendants in the execution; that C. was a trustee as to the other creditors, and that the agreement with A. and B. was a bailment and not a sale.

2. The defendants in the execution became the agents of C. as trustee, and no interest passed to them under the agreement which could be affected by a subsequent execution against them.

May 12th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. SHARSWOOD, C. J., and GREEN, J., absent.

Error to the Court of Common Pleas of *Perry county:* Of May Term 1880, No. 141.

This was a feigned issue wherein Catharine Miller, Mary Miller and Elizabeth Miller were plaintiffs and J. H. Irvine, cashier, defendant, to try the title to certain personal property levied on by the sheriff as the property of Michael and Theophilus Miller, the defendants in an execution, and claimed by the plaintiffs.

The jury found the following special verdict: That Catharine Miller is the mother of Theophilus and Michael Miller, and that Mary and Elizabeth Miller are the respective wives of the said Theophilus and Michael Miller. That the latter were partners in the manufacture of crockery-ware near Newport, Perry county, in 1877. That as partners they owe their mother, Catharine Miller, $600. That they owed their wives jointly the sum of $900. That the brothers found themselves in failing circumstances in December 1877, and that they owed David Kline $803; and that Abraham Horting was liable as their endorser for $100, and that they owed Charles Meyers $300, and Jacob Frank $200; and that they were involved and owed other parties, such as the present defendant, considerable sums of money, and were utterly insolvent. That in order to prefer David Kline, Abraham Horting, Myers, Jacob C. Frank, their own mother and their wives, the brothers confessed, on the 22d day of December 1877, a judgment to the said David Kline for the sum of $2923.50, which was entered in the Court of Common Pleas of Perry county to No. 280, October term 1877; and by the terms of this judgment it was to secure Kline, Horting, Myers, Frank, their mother and their respective wives, without giving any of the parties secured a preference so that one should be paid to the exclusion of the other. The judgment thus stood as a security for all named

therein.  That an execution issued on said judgment to Kline to No. 89, January term 1878, a levy was made on the personal property of the Miller brothers, consisting of crockery-ware, horses, wagons, &c., including the property involved in the issue now trying; a sale was made of these goods levied on, on the 31st day of December 1877 by the sheriff, and the bulk thereof was purchased by David Kline, the plaintiff in the said execution, for about $1337.69.  That after Kline thus became the purchaser of said property, he did not remove the same from the possession of the said defendants (Miller brothers) in the execution, but entered into the following agreement, to wit:

" It was agreed that the Miller brothers should keep possession of the property, sell it, and pay in full the sum of $800 to Kline; next pay $100 to or for Horting, and what balance remained to be taken for the mother and the wives of the Miller brothers; that is to say Kline was to be paid in full, Horting was to be paid in full, and the mother and wives would take the residue.  That afterwards ware came down some and they (the mother and wives) agreed with the Miller brothers to take the rest in property; if it was sold for gain it was their gain, and if there was a loss it was their loss."

That the Miller brothers did thus retain the property, used it and did sell sufficient in amount to pay Kline between $600 and $700, or in the neighborhood of $600 or $700, so that Kline is not yet paid in full.  No money has been paid to Myers, and none has been paid to Horting.  That the property in dispute is a part of the property sold under the Kline judgment and execution bought by Kline, and left with the defendants in the writ, the Miller brothers, under the agreement, terms and conditions specified in this verdict, and was levied on by the defendant on his execution No. 37, October term 1878.  We find that the debts claimed by Kline, Myers, Horting, Frank, the mother and the wives of the Miller brothers were just, due and owing.  That under these facts we are ignorant whether the arrangements made between Kline, the purchaser of the property, and the Miller brothers, as set out in this verdict was in law a bailment, which would protect the same from levy and sale on a subsequent execution, or a sale which reinvested the Miller brothers with the title thereto, and thus make it liable to subsequent levy and sale; if a bailment, we find for the plaintiffs, and if a sale, we find for the defendant.

The court entered judgment for the defendant, when plaintiffs took this writ and assigned this action of the court for error.

*A. M. Markel* and *Charles A. Barnett*, for plaintiffs in error.— The agreement between Kline and the Miller brothers passed no title; it was not a sale, but simply a bailment: Maynes *v.* Atwater,

[Miller *v.* Irvine.]

7 Norris 496; Benjamin on Sales, 2d ed., 1; Williamson *v.* Berry, 8 How. 544; Wait's Actions and Defences, vol. 5, 527; Clark *v.* Jack, 7 Watts 375; McCullough *v.* Porter, 4 W. & S. 177; Becker *v.* Smith, 9 P. F. Smith 469. There was no sale in law, because nothing was to be paid to Kline as the owner of.the goods. In point of fact he was not the owner of the goods. He was the trustee in the judgment and execution for himself and the other creditors named. The debt of the judgment did not all, nor for the most part, belong to him. He purchased the goods at the sheriff's sale as such trustee plaintiff. The goods so bought became the property of himself and the others for whom he was trustee. Only upon paying the others out in full would the goods have become his individually. But he did not so pay. The beneficial ownership of the goods was in all the beneficial owners of the judgment.

*W. A. Sponsler,* for defendant in error.—A bailment is always the subject of return or under the direction or control of the bailor: Crist *v.* Keeler, 29 P. F. Smith 290. Dick *v.* Cooper, 12 Harris 217, is analogous to the case at bar. Whenever a contract is made whereby the person delivering the property into hands of persons against whom the execution of creditors goes out is precluded from reclaiming them, or directing their disposition, the principle of bailment ceases to exist and the contract is a sale. A right to demand the price of the goods is no title to the goods themselves: Heitzman *v.* Divil, 1 Jones 264.

Mr. Justice Paxson delivered the opinion of the court, June 19th 1880.

The single assignment of error here is that the court below erred in entering judgment for the defendant upon the special verdict.

It is not disputed that the sheriff's sale passed a good title to the personal property in controversy to Kline, the purchaser at said sale. His right to leave it with the defendants in the execution is equally clear: Myers *v.* Harvey, 2 P. & W. 478; Craig's Appeal, 27 P. F. Smith 448, and Maynes *v.* Atwater, 7 Norris 496. The judgment upon which the property was sold was confessed to Kline to secure his own debt, and sundry other debts due by the Miller Brothers, the defendants in said judgment. Kline bought the property to protect himself and the others. As to them he was a trustee. After selling a part of the property he moved out of the county and left the remainder in the hands of the Miller Brothers, under an agreement that they should sell the same and apply the proceeds first to the payment of Kline's claim; second to the claim of Horting, and lastly to the claim of the mother and the wives of Miller Brothers. The special verdict finds the

[Miller *v.* Irvine.]

further fact "That afterwards ware came down some, and they (the mother and wives) agreed with the Miller Brothers to take the rest in property ; if it was sold for gain, it was their gain ; and if there was a loss, it was their loss.

The effect of this arrangement was to make Miller Brothers the agents of Kline, the trustee, to sell the property and apply the proceeds in accordance with the trust.   It passed no title to Miller Brothers.   They could sell and deliver, and in doing so make good title, but it was the title of Kline, the trustee, for whom they acted as agent.   There was no interest or profit reserved to them in the transaction, in which respect the case differs essentially from Dick *v.* Cooper, 12 Harris 217, relied upon by the court below.   Nor is Heitzman *v.* Divil, 1 Jones 264, in point.   There property of a perishable character was left with the defendant in the execution for his consumption, to be returned in kind, and not the same property.   Here no portion of the property was to be retained by Miller Brothers.   They had no interest in it whatever.   The balance, after paying the claims of Kline and Horting, was to go to the mother and wives.   We need not discuss the position assumed by the court below, that Miller Brothers could not sell the property to their wives for the reason that such a transaction would be against public policy.   No such point is involved in the case. The property in controversy did not belong to them, but to Kline, the trustee.   As his agent, Miller Brothers had the right to turn over the property to their wives as creditors under the trust.

We are of opinion that the agreement between Kline and Miller Brothers was a bailment, and that it was error to enter judgment below for the defendant.

> The judgment is reversed, and judgment is now entered for the plaintiff upon the special verdict.